THE QUEVILLY.

(Circuit Court of Appeals, Third Circuit. December 18, 1899.)

No. 21.

1. TOWAGE—SUIT TO RECOVER—CONSTRUCTION OF LIBEL.

In a suit to recover a balance claimed to be due for towage services, an allegation in the libel that the charge for towage was made in accordance with a printed schedule of rates based on the tonnage of the vessel, which was shown to the captain of the vessel, and agreed to by him; that settlement was made on the basis of the tonnage as stated by the captain, but a corrected rate was afterwards agreed to, based upon the tonnage of the vessel required by the customs officers of the United States, —cannot be construed to mean that the schedule of rates was based exclusively on the tonnage as fixed by the customs officers, but that it was based on the actual tonnage, which was, in the case in question, correctly ascertained by such officials.

2. SAME—CONSTRUCTION OF CONTRACT.

Under an agreement for towage in accordance with a schedule of rates based upon the tonnage of the vessel, the amount of the charge is to be determined by the actual tonnage, as to which the statement of the Lloyd's register, while, no doubt, generally correct, is not conclusive.

Appeal from the District Court of the United States for the Eastern District of Pennsylvania.

For opinion below, see 95 Fed. 182.

Horace L. Cheyney, for appellant.
Curtis Tilton, for appellee.

Before ACHESON, DALLAS, and GRAY, Circuit Judges.

DALLAS, Circuit Judge. We do not think that the appellant's criticism of the libel is well founded, or that his view of the effect of the evidence adduced in its support is correct. It is not alleged in the libel "that the tonnage of the bark, ascertained by the customs officials of the United States for the port of Philadelphia, is the basis of the rates of the Towboat Association." What is alleged is "that the

said tariff is a printed schedule of rates, which was shown to the captain of said bark, and charges are made according to the tonnage of the vessel; that the tonnage of said bark was at first misrepresented by the said captain of said bark, so that the towage rate was only $144, but that the corrected rate, as finally accepted by said captain, based upon the tonnage required for said bark by the customs officials of the United States for the port of Philadelphia, made the towage rate $220 for said service, which the master of the bark agreed to, but her agent refused, and still refuses, to pay." This cannot be construed to mean that the tariff of the association had for its basis the ascertainment of tonnage exclusively by the Philadelphia customs officials. Its plain meaning is that the towage charges were to be made according to actual tonnage, however ascertained, and that in this instance the actual tonnage had, in fact, been correctly determined by those officials. No part of the evidence was inconsistent with this allegation. No doubt, tonnage is, in general, assumed to be rightly stated in the Lloyd's books, but there was no testimony which would have justified a finding that those books must, in all cases, be regarded as conclusive. The court below was of opinion that the real question was as to the true net tonnage of the Quevilly, and this question it decided in accordance with the action of the customs authorities. This, we think, was clearly right; and, as the opinion which was filed by the learned judge sufficiently presents our own views upon the whole case, further discussion of it is unnecessary. The decree is affirmed.